UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Narcus Wesley,<br><br>  Petitioner<br><br>v.<br><br>Director, Nevada Department of Corrections, et al.,<br><br>  Respondents | 2:13-cv-01513-JAD-CWH<br><br>**Order Denying Amended Petition for Writ of Habeas Corpus and Closing Case**<br><br>[ECF No. 36] |

Narcus Wesley brings this § 2254 petition to challenge his Nevada state conviction and sentence for robbery and a slew of related charges. Having reviewed respondents' answer to Wesley's remaining grounds for relief, I deny Wesley's petition in its entirety, decline to issue a certificate of appealability, and close this case.

## Background[1]

**A.   Wesley's trial**

In April 2007, the state charged Wesley and his co-defendant Delarian Wilson with 18 counts, all stemming from Wesley and Wilson's February 2007 robbery. The two successfully moved to sever, Wilson pleaded guilty to 3 of the 18 counts, and Wesley proceeded to trial.

At trial, the evidence established the following: In February 2007, Wesley and Wilson barged into an apartment occupied by five men and one woman, drew guns, and demanded cash, cell phones, and wallets. Unsatisfied with their plunder, Wilson obtained ATM cards and PINs from two victims and then had one of the victims drive him to two ATMs and withdraw a total of $900. Meanwhile, Wesley stayed at the apartment with the other five victims, whom he threatened to shoot if they moved. When Wilson returned, he ordered one of the male victims and the female victim to undress and engage in various sex acts with each other. When the male victim was unable to

---

[1] Except where otherwise indicated, this background section is derived from respondents' exhibits at ECF Nos. 15–19 and this court's docket.

perform, Wilson ordered another male victim to have sex with the female victim.  That male victim was also unable to perform, so Wesley moved the female victim, still undressed, to a recliner, ordered her to put her legs in the air, and digitally penetrated her vagina.  Wilson and Wesley then left with all of the victims' cell phones.

On April 8, 2008, a jury found Wesley guilty of conspiracy to commit burglary, conspiracy to commit robbery, two counts of burglary while in possession of a deadly weapon, four counts of robbery with the use of a deadly weapon, two counts of assault with the use of a deadly weapon, first-degree kidnapping with the use of a deadly weapon, five counts of sexual assault with the use of a deadly weapon, coercion with the use of a deadly weapon, and open or gross lewdness with the use of a deadly weapon.

**B.     Procedural history**

Wesley unsuccessfully moved for a new trial, and the trial court judge sentenced him to various consecutive and concurrent terms of imprisonment ranging from 12 months to life.  The court filed the judgment of conviction on July 18, 2008.  Wesley appealed his convictions, and on the state's motion, the state district court entered an amended judgment on October 8, 2008, that corrected deadly-weapon enhancements to comply with state law.

The Nevada Supreme Court affirmed Wesley's convictions, and Wesley filed a habeas petition in the state district court.  The court denied the petition; Wesley appealed, and the Nevada Supreme Court affirmed.  On August 19, 2013, Wesley dispatched his federal habeas petition, and he filed his first-amended petition seven months later.[2]  After dismissals, Wesley's remaining grounds are 1, 4, 5, 7, 8, 9, 10, 11, and 12.[3]  Respondents have filed their answer, and I now address Wesley's remaining claims on their merits.

---

[2] ECF No. 36.

[3] On respondents' motion, I dismissed grounds 2, 6, and 14 of the amended petition as unexhausted, ground 13 as procedurally barred, and ground 3 as redundant to grounds 7 and 8.  ECF No. 27.

**Discussion**

**A.     Standard for habeas relief under 28 U.S.C. § 2254(d)**

A federal court may not grant an application for a writ of habeas corpus on behalf of a person in state custody on any claim that was adjudicated on the merits in state court unless the state-court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.[4] In making this determination, federal courts look to the last reasoned state-court decision.[5] "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."[6] To the extent no reasoned opinion exists, courts must independently review the record to determine whether the state court clearly erred in its application of controlling federal law or whether the state court's decision was objectively unreasonable.[7]

### *1.     Ground one: confrontation-clause violations*

In ground one, Wesley claims that recorded statements by co-defendant Wilson were admitted in violation of the confrontation clause because Wilson did not testify at trial. Wesley argues that, if Wilson had not pleaded guilty, his statements would not have been admissible at trial under *Bruton v. United States*,[8] and that, because these statements would not have been admissible at a joint trial, they were inadmissible at Wesley's trial unless Wesley had an opportunity to cross-examine Wilson regarding his statements.

---

[4] 28 U.S.C. § 2254(d).

[5] *Smith v. Hedgpeth*, 706 F.3d 1099, 1102 (9th Cir. 2013), *cert. denied* 133 S.Ct. 1831 (2013).

[6] *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

[7] *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) (holding that "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

[8] *Bruton v. United States*, 391 U.S. 123 (1968).

The Nevada Supreme Court rejected a similar claim on direct appeal. The Court reasoned that "Wilson's statements during the perpetration of the crime were non-hearsay" and were thus admissible and that "Wilson's confession and guilty plea were admitted by the defense over the State's objections," and Wesley had thus waived his confrontation rights.[9]

The Nevada Supreme Court applied the correct federal standard and its ruling is not objectively unreasonable. "Under *Bruton* and its progeny, the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when the statement facially, expressly, clearly, or powerfully implicates the defendant."[10] But *Bruton* does not afford Wesley any relief because *Bruton* applies only when co-defendants are tried jointly and is inapplicable when the non-testifying co-defendant is severed out, as was the case here.[11]

Ground one also fails under general confrontation-clause jurisprudence. Wesley—not the state—offered Wilson's taped confession as evidence.[12] Indeed, the state vehemently objected to the admission of the confession.[13] And, to the extent Wesley is challenging the admission of statements attributed to Wilson by victim witnesses, those statements were "nontestimonial," which means their admissibility was governed by Nevada's evidence laws.[14] The Nevada Supreme Court correctly determined that those statements were non-hearsay because they were statements by a co-conspirator of a party during the course and in furtherance of the conspiracy.[15]

---

[9] ECF No. 18-11 (citing *Ford v. State*, 138 P.3d 500, 506 (Nev. 2006)).

[10] *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc).

[11] *See United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007).

[12] ECF No. 16-6 at 20–22.

[13] *Id.* at 14–20.

[14] *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.").

[15] ECF No. 18-11 at 2 (citing NEV. REV. STAT. § 51.035(3)(e)).

I therefore find that Wesley is not entitled to habeas relief under ground one.

### 2. Ground 4: Fourth and Fifth Amendment violations

In ground four, Wesley alleges that the trial court erred by failing to suppress (1) evidence obtained under a search warrant and (2) Wesley's statements to police made after he invoked his *Miranda* rights.

Wesley claims that the search warrant affidavit contained false information: that Wesley had a power bill in his name at the residence to be searched. Under *Franks v. Delaware*, evidence obtained as the result of a search warrant containing intentionally false or misleading statements necessary to the finding of probable cause must be suppressed.[16] However, under the United States Supreme Court's decision in *Stone v. Powell*, the rule announced in *Franks* is not cognizable on habeas review if the defendant had a full and fair opportunity to litigate his Fourth Amendment claim.[17]

The record reflects that Wesley had a full and fair opportunity to litigate his Fourth Amendment claim challenging the warranted search of his residence. On Wesley's motion, the trial court conducted a *Franks* hearing to determine if knowingly false information was included in the search warrant affidavit and if that information was necessary to the finding of probable cause. At the hearing, the detective who obtained the warrant, an employee of the power company, Wesley's parents, and Wesley himself all testified.[18] The trial court denied Wesley's suppression motion, finding that, although the search warrant application contained incorrect information, the detective did not intentionally or recklessly falsify it.[19] Wesley does not explain or offer any evidence to show that the procedures afforded at this hearing were deficient. Because Wesley had a full and fair opportunity to litigate this claim in state court, this claim is barred under *Stone v. Powell*.

As to Wesley's *Miranda* claim, Wesley alleges that his father asked police officers to contact

---

[16] *Franks v. Delaware*, 98 S.Ct. 2674, 2676 (1978).

[17] *Stone v. Powell*, 428 U.S. 465, 494 (1976).

[18] ECF No. 15-22.

[19] *Id.* at 115–16.

the family attorney before questioning him (Wesley).  Wesley contends that this was sufficient to invoke his *Miranda* rights, which the police then violated by interrogating him without contacting the attorney.  Thus, according to Wesley, the trial court erred in not suppressing his statements to the police.

The Nevada Supreme Court rejected this claim on direct appeal, reasoning that "Wesley was properly informed of his *Miranda* rights before he consented to questioning" and that his "father's request for an opportunity to contact the family attorney did not constitute an invocation of Wesley's right to counsel."[20]  The Nevada Supreme Court applied the correct federal standard to Wesley's claim and its decision is not based on an unreasonable application of that standard or based on an unreasonable determination of the facts in light of the evidence presented.  Section 2254(d) therefore requires me to defer to the state court's decision.

Accordingly, Wesley is not entitled to relief on ground four.

### 3. Ground 5: sufficiency of the evidence

Wesley next claims that there was insufficient evidence presented at trial for the jury to find him guilty beyond a reasonable doubt.  He alleges that there were no out-of-court identifications by any of his victims and that the in-court identifications were suspect because each of the witnesses testified that his or her head was down and that he or she did not see Wesley's face.  He also claims that most of the testimony attributed very few, if any, activities to him, but instead primarily referred to either "they/them" or Wilson.

The Nevada Supreme Court rejected this claim on direct appeal, reasoning that, "in addition to the consistent testimony of six victims regarding the crime and their identification of Wesley as matching the description of one of the two perpetrators, Wesley admitted his willing involvement."[21]  Thus, the evidence "was more than sufficient for a rational juror to find beyond a reasonable doubt that Wesley was guilty of all the charged crimes."

---

[20] ECF No. 18-11 at 3 (citing *Terry v. LeFevre*, 862 F.2d 409, 412 (2nd Cir. 1988) (mother cannot invoke right of counsel of behalf of son); *Dewey v. State*, 169 P.3d 1149, 1150 (Nev. 2007) (request for counsel must be "clear, unequivocal, and unambiguous")).

[21] ECF No. 18-11 at 3.

In reviewing sufficiency-of-evidence claims, federal courts ask only if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[22] Where the state court applies this standard, federal habeas courts ask only whether the state court's application was "objectively unreasonable."[23] The Nevada Supreme Court correctly applied this standard on direct appeal. The Court's decision is also not based on an unreasonable application of the facts in light of the evidence presented. Nevada law follows general conspiracy principals and does not distinguish between "an aider or abettor to a crime and an actual perpetrator of a crime; both are equally culpable."[24] A jury therefore could have found Wesley guilty beyond a reasonable doubt even though certain acts were purportedly perpetrated by Wilson and not Wesley. The Nevada Supreme Court's conclusion is not objectively unreasonable, and Wesley is not entitled to relief on ground five.

**B.   Ineffective assistance of counsel under 28 U.S.C. § 2254(d)**

In *Strickland v. Washington*, the United States Supreme Court established a two-prong test for ineffective-assistance-of-counsel claims.[25] A petitioner must show (1) that the defense attorney's representation "fell below an objective standard of reasonableness" and (2) that the attorney's deficient performance prejudiced the defendant so severely that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[26] If a state court has adjudicated a claim of ineffective assistance of counsel, federal habeas courts ask only "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[27] Wesley has not met his burden for any of his remaining claims.

---

[22] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[23] *See Boyer v. Belleque*, 659 F.3d 957, 954–65 (9th Cir. 2001).

[24] *Sharma v. State*, 56 P.3d 868, 870 (Nev. 2002).

[25] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[26] *Id.* at 694.

[27] *Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

### *1.   Ground 7: Ineffective assistance of counsel—conceding guilt*

In ground seven, Wesley argues that his counsel was constitutionally deficient for conceding his guilt throughout trial without his consent. Wesley cites the following comments during counsel's opening statement:

> As the State said, and they are correct, Danielle Browning was raped. Many of those kids were robbed. One of those kids was kidnapped. They were terrorized for an [sic] upwards of two hours. They had guns waved in their faces.
>
> I'm not disputing that. Mr. Banks is not disputing that, and Mr. Wesley is not disputing that.
>
> . . .
>
> And at the end of this trial, all we ask you to do is to hold Narcus Wesley responsible for what he did, nothing more, and certainly nothing less.[28]

Wesley also notes that counsel referred to Wesley's statement to police as a "confession" when cross-examining a police detective and made the following comments in his closing argument:

> What Narcus did was vile.
> It was disgusting.
> It was horrific.
> And Danielle didn't deserve that. She didn't deserve that.
> It was bad, and don't think that everyone in this room doesn't feel that way.[29]

The Nevada Supreme Court rejected this claim on appeal in Wesley's state habeas proceeding, clarifying that "[t]rial counsel conceded that the facts of the crime occurred, but argued [Wesley] was not criminally liable because he acted under duress based upon perceived threats from his codefendant,"[30] which is a legally viable defense under Nevada law. The court reasoned that, "because trial counsel argued [Wesley] was not criminally liable for the charged offenses [because he] acted under duress, counsel's admission that the facts surrounding the crime were true did not

---

[28] ECF No. 15-25 at 52, 56.

[29] ECF No. 16-6 at 24; ECF No. 16-7 at 23.

[30] ECF No. 19-15 at 3. *See Browning v. State*, 91 P.3d 39, 49 (Nev. 2004) (stating "[u]nder NRS 194.010(7), duress requires a reasonable belief that one's life would be endangered or that one would suffer great bodily harm").

amount to a concession of guilt" and counsel was thus not ineffective.[31] The court also found that Wesley failed to show prejudice because he failed "to demonstrate a reasonable probability of a different outcome had counsel argued the facts surrounding the crime had not occurred as there was overwhelming evidence of [Wesley's] guilt given [his] confession."[32]

The United States Supreme Court has held that a defense counsel's failure to obtain the defendant's express consent before conceding guilt in a capital case does not automatically place counsel's performance below constitutional standards.[33] In those situations, courts should apply *Strickland* to determine whether counsel's performance in that particular case fell below objective standards of reasonableness.[34] The Ninth Circuit Court of Appeals has extended this rule to noncapital trials as long as the concession does not abandon all meaningful adversarial testing of the prosecution's case.[35]

The Nevada Supreme Court's application of *Strickland* is not objectively unreasonable. Wesley's counsel faced overwhelming evidence of Wesley's participation in the crimes. Counsel's decision to attempt to minimize Wesley's role by placing primary responsibility for the crimes on Wilson was reasonable under the circumstances. Wesley also has not demonstrated a reasonable probability that, but for counsel's concessions, the outcome of his trial would have been different. Because the state court's decision denying relief is not based on an unreasonable application of *Strickland* or an unreasonable determination of the facts, Wesley is not entitled to habeas relief for ground seven.

---

[31] *Id.*

[32] *Id.*

[33] *Florida v. Nixon*, 543 U.S. 175, 188–89 (2004).

[34] *Id.*

[35] *See, e.g., United States v. Thomas*, 417 F.3d 1053, 1057–59 (9th Cir. 2005), *cert. denied* 546 U.S. 1121 (2006) (applying *Nixon* and holding that *Strickland*, not *Cronic*, controlled even though counsel conceded guilt to one of two robbery counts because concession did not abandon all meaningful adversarial testing of the prosecution's case).

### 2. Ground 8: Ineffective assistance of counsel----introduction of co-conspirator's statements

Wesley also claims that his trial counsel was ineffective for introducing inculpatory statements made by Wilson, including Wilson's guilty plea and taped interview with police, without Wesley's consent.

The Nevada Supreme Court rejected this claim in Wesley's state post-conviction proceeding, finding that Wesley failed to show that counsel was deficient or that Wesley was prejudiced as a result. The court recounted that, "during a lengthy discussion, in [Wesley's] presence but not before the jury, counsel informed the district court that he believed the codefendant's statements would show that the codefendant was the leader during the incident and that the codefendant changed his story so often that the jury would not believe the codefendant's version of events."[36] The court reasoned that "this was a tactical decision related to appellant's duress defense" and was thus "'virtually unchallengeable absent extraordinary circumstances'" not present here.[37]

Counsel's decision to present Wilson's statements and guilty plea was part of a reasonable strategy to convince the jury that Wilson was primarily responsible for the charged crimes and that Wesley participated under duress. And the record belies Wesley's assertion that his counsel admitted these statements without his consent. The Nevada Supreme Court's application of *Strickland* is not objectively unreasonable, and Wesley is not entitled to relief on ground eight.

### 3. Ground nine: Ineffective assistance of counsel—conflict of interest.

Wesley claims he received ineffective assistance of counsel because trial counsel and appellate counsel labored under a conflict of interest. Wesley's counsel, the Clark County Public Defender's Office, also represented Wesley's father in a felon-in-possession case stemming from the discovery of a rifle during the execution of the search warrant in Wesley's case.

The detective who executed the search warrant mentioned the discovery of the rifle during

---

[36] ECF No. 19-15 at 3–4.

[37] *Id.* (citing *Ford v. State*, 784 P.2d 951, 953 (Nev. 1989)).

direct examination at Wesley's trial.[38]  Outside the presence of the jury, defense counsel moved for a mistrial, arguing that he could not defend the suggestion that Wesley had access to the rifle without inculpating Wesley's father in a crime.[39]  The trial judge denied the motion, noting that the evidence presented to that point indicated that whatever Wesley had in his hand during the events in question was certainly not a rifle.[40]  And the judge gave a curative instruction that the rifle belonged to Wesley's father, was found in the garage, and had "absolutely nothing to do with this case."[41]

"To establish a violation of the right to conflict-free counsel, the petitioner must show either that (1) in spite of an objection, the trial court failed to allow him the 'opportunity to show that potential conflicts impermissibly imperil[ed] his right to a fair trial;' or (2) that an actual conflict of interest existed."[42]  To show an actual conflict of interest, the petitioner must demonstrate that counsel's performance was adversely affected by the alleged conflict.[43]

The Nevada Supreme Court rejected this claim in Wesley's state post-conviction proceeding, finding that Wesley had not shown an actual conflict.  The court reasoned that "[a]ll parties agreed that the firearm belonged to the father, but counsel stated he felt he could not state to the jury in appellant's case that the father owned the firearm, as that was effectively accusing a client represented by his office of a crime.  The district court instructed the jury that the firearm belonged to the father, not appellant, thereby relieving counsel of the burden of posing questions regarding the

---

[38] ECF No. 16-5 at 44.

[39] *Id.* at 46.

[40] *Id*. at 46–47.

[41] *Id*. at 48.

[42] *Alberni v. McDaniel*, 458 F.3d 860, 869–70 (9th Cir. 2006) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).

[43] *Mickens v. Taylor*, 535 U.S. 162, 171 (2002)  ("[A]n actual conflict of interest [means] precisely a conflict that *affected counsel's performance*—as opposed to a mere theoretical division of loyalties.").

father's gun ownership."[44]

Any conflict arising from public defenders office's concurrent representation of Wesley and his father was quickly resolved by the trial court. Wesley has failed to establish the existence of an actual conflict or to link the purported conflict to a particular defect in counsel's performance. The Nevada Supreme Court adjudicated this claim under the correct standard, and Wesley has not shown that the state court's denial of this claim was based on an unreasonable application of that standard or on an unreasonable determination of the facts. Ground nine is denied.

### 4. Ground 10: Ineffective assistance of counsel—failure to investigate

Wesley argues that his trial counsel was ineffective for failing to (1) present witnesses to testify about Wesley's good character, (2) impeach the female victim's testimony with inconsistent statements in her police report, and (3) investigate the victims' motives to make false accusations The Nevada Supreme Court rejected this claim in Wesley's state post-conviction proceeding, reasoning that Wesley failed to (1) identify any witnesses who could have testified about his good character, (2) identify which portions of the victim's testimony conflicted with her statements to police (and the court noted that trial counsel *did* question the victim about differences between her preliminary hearing testimony and her trial testimony), (3) explain why and how he believes the victim's allegations were fabricated.[45]

The Nevada Supreme Court's application of Strickland is not objectively unreasonable. Wesley still has not substantiated these claims with any specific information or evidence. He still has not identified the character witnesses counsel failed to investigate, the inconsistencies between the female victim's trial testimony and her police report, or the motives the victims may have had to make false allegations. Wesley is therefore not entitled to federal habeas relief on ground ten.

### 5. Ground 11: Ineffective assistance of counsel—pretrial identification

Wesley contends that his trial counsel was ineffective for failing to challenge the admission of a suggestive pretrial identification. Wesley claims that his counsel should have sought to preclude

---

[44] ECF No. 19-15 at 4–5.

[45] *Id.* at 5–6.

Wilson's identification of Wesley's photograph, which was admitted through the testimony of a police detective. Wesley argues that the identification violated *Bruton* because Wilson did not testify at trial and that it violated *Neil v. Biggers*[46] because it was impermissibly suggestive.

A suggestive identification procedure alone does not establish a *Biggers* violation.[47] Instead, the court must determine whether there was a "'very substantial likelihood of irreparable misidentification.'"[48] If a witness identification is tainted by suggestive procedures, the court must consider the reliability of the identification under the totality of the circumstances.[49] If suggestive procedures are not used, the reliability of the identification is generally a question for the jury.[50]

The Nevada Supreme Court rejected this claim, finding that the identification procedure was not unnecessarily suggestive and reasoning that "[t]he codefendant knew [Wesley] and told the police [Wesley's] first name and that [Wesley] attended UNLV before the police showed a photograph of [Wesley] to the codefendant for identification purposes."[51] The court also found that Wesley failed to show prejudice given that he admitted to police that he participated in the incident and because his duress defense rendered identification of the participants a nonissue at trial.

The Nevada Supreme Court correctly applied *Biggers*, and its application of *Strickland* to this claim is not objectively unreasonable. A pretrial motion to suppress based on *Biggers* had little if any chance for success given that, prior to the identification, Wilson had already identified Wesley

---

[46] *Neil v. Biggers*, 409 U.S. 188 (1972).

[47] *Biggers*, 409 U.S. at 198.

[48] *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

[49] *Biggers*, 409 U.S. at 199. The factors to be considered under *Biggers* are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

[50] *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (*Biggers* factors are to be weighed against the corrupting effect of the suggestive identification); *see also United States v. Wong*, 40 F.3d 1347, 1359 (2nd Cir. 1994) (where impermissibly suggestive procedures were not used, the reliability of the identification becomes a question for the jury).

[51] ECF No. 19-15 at 6–7.

by name and informed the police that he had played football with him at UNLV. Because Wilson was not available as a witness at trial, the detective's testimony regarding Wilson's identification of Wesley was objectionable on hearsay grounds.[52] But, as the Nevada Supreme Court explained, Wilson's identification of Wesley was inconsequential because Wesley's defense was premised on his level of involvement in the crimes, and he did not deny that he was the person with Wilson when the crimes were committed.[53] Thus, even if counsel was ineffective for failing to object to the detective's testimony about Wilson's identification of Wesley, Wesley has not shown prejudice.

Because the Nevada Supreme Court correctly applied *Briggers* and its application of *Strickland* is not objectively unreasonable, Wesley is not entitled to relief on ground 11.

### 6. Ineffective assistance of counsel—psychological exam

Finally, Wesley argues that his trial counsel was ineffective for failing to request a psychological exam on the female victim. Wesley does not indicate why an examination was necessary or explain how it would have benefitted his defense.[54] Thus, Wesley falls well short of showing counsel's omission amounted to ineffective assistance of counsel, and ground 12 is also denied.

## C. I decline to issue a certificate of appealability.

To obtain a certificate of appealability, a petitioner must make "a substantial showing of a denial of a constitutional right"[55] by showing that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."[56] To meet this threshold, the petitioner must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the

---

[52] *Cf. United States v. Elemy*, 656 F.2d 507, 508 (9th Cir. 1981) (holding that FBI agent's testimony regarding witness's prior identification was admissible where nothing in the record suggested that the declarant was unavailable for reexamination after the agent's testimony).

[53] Wesley's *Bruton* claim again misses the mark because he and Wilson were tried separately.

[54] *See Koerschner v. State*, 13 P.3d 451, 455 (Nev. 2000) (trial court should order a psychological examination of the victim only if the defendant presents a compelling reason).

[55] 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

[56] *Slack*, 529 U.S. at 484.

issues differently, or that the questions are adequate to deserve encouragement to proceed further.[57] Because no reasonable jurist would find my conclusion that Wesley's grounds for relief fail on their merits debatable or wrong, I decline to issue Wesley a certificate of appealability.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that **Wesley's amended petition for writ of habeas corpus [ECF No. 36] is DENIED; and I decline to issue a certificate of appealability.**

The Clerk of Court is instructed to enter judgment for respondents and against petitioner and to CLOSE THIS CASE.

Dated this 17th day of August 2016.

_____
Jennifer A. Dorsey
United States District Judge

---

[57] *Id.*